IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> and ) <br> ) <br> STATE OF MINNESOTA, by its Attorney General ) <br> Hubert H. Humphrey, III, its Department of Health, ) <br> and its Pollution Control Agency, ) <br> ) <br> Plaintiff-Intervenor, ) <br> ) <br> vs. ) <br> ) <br> REILLY TAR & CHEMICAL CORPORATION; ) <br> HOUSING AND REDEVELOPMENT ) <br> AUTHORITY OF ST. LOUIS PARK; OAK PARK ) <br> VILLAGE ASSOCIATES; RUSTIC OAKS ) <br> CONDOMINIUM INC.; and PHILLIP'S ) <br> INVESTMENT CO., ) <br> ) <br> Defendants, ) <br> ) <br> and ) <br> ) <br> CITY OF ST. LOUIS PARK, ) <br> ) <br> vs. ) <br> ) <br> REILLY TAR & CHEMICAL CORPORATION, ) <br> ) <br> Defendant, ) <br> ) <br> and ) <br> ) <br> CITY OF HOPKINS, ) <br> ) <br> Plaintiff-Intervenor, ) <br> ) <br> vs. ) <br> ) <br> REILLY TAR & CHEMICAL CORPORATION, ) <br> ) <br> Defendant, ) <br> _____) | Case No. 4:80-cv-00469-PAM-FEB <br> Hon. Paul A. Magnuson <br> Hon. Floyd E. Boline <br><br> **UNITED STATES OF AMERICA'S MOTION TO ENTER PROPOSED AMENDED CONSENT DECREE** |

NOW COMES the United States of America, who states that:

On September 4, 1986, this Court entered a Consent Decree in this action resolving claims brought by Plaintiff United States of America and Plaintiff-Intervenor State of Minnesota against Reilly Tar & Chemical Corporation ("Reilly Tar"), Housing and Redevelopment of St. Louis Park, Oak Park Village Associates, Rustic Oaks Condominium Inc., and Phillip's Investment Co. (collectively, the "Defendants"), and the consolidated actions brought by City of St. Louis Park and City of Hopkins against Reilly Tar, all under Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606-07, seeking injunctive relief regarding the cleanup of the Reilly Tar & Chemical Corporation (St. Louis Park Plant) Superfund Site in St. Louis Park, Minnesota ("Site" or "Reilly Tar Site") and recovery of certain response costs incurred in connection with releases and threatened releases of hazardous substances at and from the Site.

Following the bankruptcy liquidation of Vertellus Specialties Inc., the successor-in-liability to Reilly Tar, the parties entered into a proposed Amended Consent Decree, signed by authorized representatives of the United States, Minnesota, the City of St. Louis Park, the City of Hopkins, and the Defendants. On November 4, 2019, the United States filed a *Notice of Lodging of Proposed Amended Consent Decree* [Doc. 36] with this Court and lodged a proposed Amended Consent Decree, pending public notice and comment on it.

In accordance with CERCLA Section 122(d)(2)(B), 42 U.S.C. § 9622(d)(2)(B), and 28 C.F.R. Part 50.7, on November 12, 2019, the United States published a notice in the *Federal Register*, advising the public of the lodging of the proposed Amended Consent Decree and inviting the public to comment on the proposed Amended Consent Decree for a 30-day period commencing with the date of publication of the notice. *See* 84 Fed. Reg. 61076.

The 30-day period for public comment expired on December 12, 2019. The United States received one set of comments during the public comment period. Having reviewed and considered the public comment, the United States continues to believe that the proposed Amended Consent Decree is fair, reasonable, protective of human health and the environment, in the public interest, and fully consistent with the purposes of CERCLA.

The United States now requests that the Court approve and enter the Amended Consent Decree.

**Background**

The Reilly Tar & Chemical Corporation (St. Louis Park Plant) Superfund Site is located at 7200 Walker Street in St. Louis Park, Hennepin County, Minnesota. The Site is approximately 80 acres in size and is now home to condominiums, townhouses, a restaurant and bowling alley, an office building, a recreational park with athletic fields, walking paths, a recreation center, a pond, a playground, and a parking lot. Republic Creosoting Company ("Republic"), a Reilly Tar subsidiary, operated a coal tar distillation and wood preserving plant at the Site from 1917 through 1972. Over the course of its operations, Republic discharged up to 6,000 gallons per week of waste containing coal tar and its distillation byproducts into a ditch that ran the length of the Site before emptying into a peat bog to the south. Additionally, Republic historically dumped creosote and waste materials down several wells located on the Site, contaminating the groundwater. When Republic ceased operations in 1972, more than a dozen wells were present at the Site, with depths varying from 50 feet to more than 900 feet.

Many local aquifers, as well as Site soils and adjacent wetlands to the south (the peat bog), are contaminated with phenols and polycyclic aromatic hydrocarbons ("PAHs"), including some carcinogenic PAHs ("cPAHs"), from releases at the Site. Aquifers are bodies of permeable

rock or unconsolidated sediments that contain or transmit groundwater. Contamination at the Site affects the six aquifers nearest to the surface: the Drift, Platteville, St. Peter, Prairie du Chien-Jordan, Wonewoc, and Mt. Simon-Hinckley. The Prairie du Chien-Jordan aquifer is the primary source of drinking water for St. Louis Park, Edina, Hopkins and other communities adjacent to Minneapolis. The deeper Mt. Simon-Hinckley aquifer is the second-most extensively used drinking water aquifer for the area.

In 1970, the State of Minnesota, through the Minnesota Pollution Control Agency (MPCA), and the City of St. Louis Park filed suit against Reilly Tar in Hennepin County District Court for violations of state and municipal pollution control laws and regulations. Two years later, in conjunction with resolving that action, Reilly Tar agreed to convey the Site to the City. The City proceeded to demolish the Republic Creosoting Company buildings and conveyed parcels to the Housing and Redevelopment Authority of St. Louis Park ("HRA") via quitclaim deed. HRA in turn conveyed parcels to Oak Park Village Associates, Rustic Oaks Condominium, Inc., and Philip's Investment Co.

In 1978, PAH contamination caused the shutdown of six municipal wells in St. Louis Park and one well in the neighboring city of Hopkins. St. Louis Park instituted a water conservation program due to daily shortages of clean, drinkable water and drilled a well to the deeper Mt. Simon-Hinckley aquifer. Approximately 60,000 cubic yards of contaminated soil was removed from the northern part of the Site and relocated to form a covered mound in the southwest portion of the Site. The City and the State reconstructed or plugged 28 multi-aquifer wells to prevent the further spread of contamination in the groundwater.

On September 4, 1980, the United States commenced a civil action against Reilly Tar under Section 7003 of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C § 6973,

4

alleging an imminent and substantial endangerment to health and the environment. The State and the City subsequently intervened and, in 1981, additional claims under CERCLA Sections 106 and 107, 42 U.S.C §§ 9606 and 9607, were alleged in an Amended Complaint. Reilly Tar filed a counter-claim against St. Louis Park, and several of the parties to the action filed cross-claims against one another.

On September 5, 1986, this Court resolved the litigation through entry of a Consent Decree-Remedial Action Plan ("CD-RAP") for the Site. The 1986 Consent Decree stated that "except where performance by another Party is expressly provided in the RAP, Reilly hereby commits to implement the requirements of the RAP." A side-agreement between Reilly Tar and the City (attached to and incorporated into the 1986 Consent Decree as Exhibit B), however, shifted a significant portion of those responsibilities to the City in exchange for Reilly Tar establishing a $1 million escrow account for the City to draw reimbursement from.

Under the 1986 Consent Decree, Reilly Tar further agreed to pay $1.68 million to the United States and $1 million to Minnesota for past and future response costs (CD Sec. R). The CD-RAP also outlined cessation criteria, Sampling and Quality Assurance standards, and Reilly Tar's obligation to investigate near-surface contamination in a limited area located south of the Site. The 1986 Consent Decree allows for amendment by written agreement of the Parties, effective upon Court approval (CD Sec. AA).

Beginning in 1981, MPCA had conducted various response actions at the Site funded through a cooperative agreement with EPA. These included removing significant volumes of coal tar from two wells and reconstructing them for use as source control wells. The Site was listed on the National Priorities List (NPL) on September 8, 1983, making it one of the first NPL sites in the country. EPA established five task-based Operable Units for the Site in its Record of

Decision (ROD) setting forth the selected remedy. While much work has been completed since entry of the 1986 CD, a number of actions remain ongoing. The City continues to remove contaminated groundwater near the source area, pumping groundwater from four wells in shallower aquifers and one from the deeper drinking water aquifer. The City also samples a very large groundwater monitoring network, including collecting water levels to help EPA understand flow directions.

Reilly Tar's successor-in-interest, Vertellus Specialties Inc. ("Vertellus"), remained ultimately responsible for Reilly Tar's obligations under the CD-RAP until Vertellus's Chapter 11 bankruptcy filing in U.S. Bankruptcy Court for the District of Delaware on May 30, 2016. At the time of the Vertellus bankruptcy, Reilly Tar's remaining work responsibilities under the side-agreement were long since completed and the City had likewise exhausted the escrow account many years prior. The City continued to be obligated, however, to operate the groundwater pump-and treat system at its own cost.

## Proposed Amended Consent Decree

The proposed amendments to the 1986 Consent Decree are primarily ministerial. With the bankruptcy dissolution of Reilly Tar's successor Vertellus, it is necessary to revise the Consent Decree to directly identify the City as the responsible party for tasks previously undertaken by it pursuant to the "side-agreement" with Reilly Tar. Because the 1986 Consent Decree was among the earliest CERCLA consent decrees, it contained significantly different language from EPA's current Remedial Action model decree. The proposed Amended Consent Decree updates the language of many standard legal provisions to facilitate nationwide consistency among similar environmental consent decrees. While the City is now directly assuming the responsibilities of a "settling defendant" under the model RA consent decree, the

6

Amended Consent Decree does not alter the substantive scope of the original settlement as to Reilly Tar / the City's liabilities.

As the remaining Parties undertook the effort to revise the Consent Decree, they likewise addressed certain outdated aspects of the Remedial Action Plan. In the more than 30 years since the 1986 CD-RAP was negotiated, EPA has established Maximum Contaminant Levels (MCLs) and the Minnesota Department of Health has established Health Risk Limits and Health-Based Values for various chemicals of interest at the Site, following advancements in the field of toxicology. The Amended Remedial Action Plan reflects the new standards for the City to comply with going forward. The Amended Remedial Action Plan also incorporates updates to risk pathways and the conceptual site model to reflect the Parties' current understanding of the Site and with the intent that these updates be adaptable to new information.

## **Comments Received During the Public Comment Period**

In its *Notice of Lodging of Proposed Amended Consent Decree* [Doc. 36], the United States advised the Court that, in accordance with the procedures set forth in CERCLA Section 122(d)(2)(B), 42 U.S.C. § 9622(d)(2)(B), and 28 C.F.R. § 50.7, the public would be provided an opportunity to comment on the proposed Amended Consent Decree. The United States further stated that after the conclusion of the public comment period it would either notify the Court of its withdrawal of consent to the proposed settlement agreement or move this Court to enter the Decree.

The United States published notice of the proposed Amended Consent Decree in the *Federal Register* on November 12, 2019. 84 Fed. Reg. 61076. The 30-day period for public comment expired on December 12, 2019, with the United States receiving only one set of comments. A complete copy of the comment, submitted on behalf of Daikin Applied Americas

Inc. and Super Radiator Coils LP ("Daikin / Super Radiator Submittal"), is attached as Exhibit 1 hereto. The United States has carefully reviewed the Daikin / Super Radiator Submittal and continues to believe that the proposed Amended Consent Decree is fair, reasonable, and in the public interest.

The Daikin / Super Radiator Submittal does not include any discussion of the proposed Amended Consent Decree itself. Rather, it consists of a series of highly technical comments regarding the revisions to the proposed Amended Remedial Action Plan that is included as an attachment to the proposed Amended Consent Decree. EPA, following consultation with the State of Minnesota, has prepared a Response to Comments (attached hereto as Exhibit 2), which provides a detailed technical discussion addressing the comments presented in the Daikin / Super Radiator Submittal.

Neither Daikin Applied Americas nor Super Radiator Coils has a direct connection to the Reilly Tar Site. Rather, these entities are associated with a separate contaminated location in St. Louis Park known as the Highway 100 and County Road 3 Groundwater Plume Site (formerly referred to as the St. Louis Park Solvent Plume and Vapor Intrusion Site (SR377)).[1] MPCA's investigation of that site identified notable concentrations of chlorinated solvents, including perchloroethylene (PCE), in soils and groundwater beneath the former Super Radiator Coils facility at 6714 Walker Street in St. Louis Park.[2] *See St. Louis Park Investigation* (April

---

[1] On August 21, 2019, MPCA asked EPA to place the Highway 100 and County Road 3 Groundwater Plume Site on the NPL. The Site was proposed as a groundwater plume with an unidentified source. Information about the Highway 100 and County Road 3 Groundwater Plume Site can be found at https://www.pca.state.mn.us/waste/highway-100-and-county-road-3-groundwater-plume-site; https://cumulis.epa.gov/supercpad/cursites/csitinfo.cfm?id=0506121; and https://www.epa.gov/superfund/current-npl-updates-new-proposed-npl-sites-and-new-npl-sites.

[2] MPCA also conducted additional investigations at the 6714 Walker Street Site (SR1376) under its Voluntary Remediation Program.

8

2015) at 4-2, 4-3 (Exhibit 3, hereto). Chlorinated solvents, however, were not identified as "chemicals of interest" at the Reilly Tar Site during the remedial investigation and there is little indication that the Site is a historical source of such contamination.

While the United States concurs with the underlying concerns posed by the Daikin / Super Radiator Submittal – that the source of chlorinated solvents be properly identified and that contaminated groundwater throughout St. Louis Park be addressed – it does not agree that the Amended Remedial Action Plan is the correct instrument to address contamination that does not originate from the Reilly Tar Site. As the attached Response to Comments details, the proposed Amended Remedial Action Plan is appropriately tailored to the identified chemicals of interest at the Reilly Tar Site, remains protective, and now incorporates current understanding of the potential risks associated with such chemicals. The Daikin / Super Radiator Submittal does not alter the United States' position that the proposed Amended Consent Decree is fair, reasonable, and consistent with the purpose of CERCLA.

## Court Review of Proposed Amended Consent Decree

The legislative history establishes that a court's role in reviewing a settlement under CERCLA is to "satisfy itself that the settlement is reasonable, fair, and consistent with the purposes that CERCLA is intended to serve." *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 85 (1st Cir. 1990), quoting H.R. Rep. No. 253, 99th Cong., 1st Sess., Pt. 3, at 19 (1985); *see also United States v. George A. Whiting Paper*, 644 F.3d 368, 372 (7th Cir. 2011) ("[T]he district court must approve a consent decree if it is reasonable, consistent with CERCLA's goals, and substantively and procedurally fair."); *United States v. Hercules, Inc.*, 961 F.2d 796, 800 (8th Cir. 1992) ("[D]istrict court reviews a proposed consent decree for fairness, reasonableness, and adequacy."). This standard of review is consistent with the standard of review that pertains to

9

consent decrees generally. *See Grunin v. International House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975) (settlements must be "fair, reasonable, and adequate"); *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988) (same).

In making its determination regarding a proposed settlement, the Court should "pay deference to the judgment of the government agency which has negotiated and submitted the proposed judgment." *Securities & Exchange Comm'n v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984); *see also George A. Whiting Paper*, 644 F.3d at 372. There is a presumption in favor of voluntary settlements. *United States v. AKZO Coatings of America*, 949 F.2d 1409, 1436 (6th Cir. 1991).

The policy encouraging settlements "has particular force where, as here, a government actor committed to the protection of the public interest has pulled the laboring oar in constructing the proposed settlement." *Cannons*, 899 F.2d 79, 84, citing *F.T.C. v. Standard Financial Management Corp.*, 830 F.2d 404, 408 (1st Cir. 1987). The underlying purpose of the Court's inquiry is to determine whether the decree adequately protects the public interest. *See United States v. Conservation Chem. Co.*, 628 F. Supp. 391, 400 (W.D. Mo. 1985), citing *United States v. Seymour Recycling Corp.*, 554 F. Supp. 1334, 1337 (S.D. Ind. 1982). It is within the public interest to encourage voluntary cleanups. *See Kelley v. Wagner*, 930 F. Supp. 293, 299 (E.D. Mich. 1996).

The settlement set forth in the proposed Amended Consent Decree is consistent with the criteria set forth above. The settlement embodied in the Amended Consent Decree constitutes the United States' best efforts to resolve this case fully and fairly in a manner consistent with the interests of the public.

## Amended Consent Decree is
## Fair, Reasonable, and Protects the Public Interest

The proposed Amended Consent Decree is fair, reasonable, consistent with the purposes of CERCLA, and in the public interest. Specifically, the proposed amendment clarifies the role and responsibilities of the City to ensure continuing implementation of the selected remedy at the Site and appropriately revises the Consent Decree following the bankruptcy dissolution of the named defendant, Reilly Tar. The sole set of comments received by the Department of Justice pertaining to the proposed Amended Consent Decree did not "disclose [any] facts or considerations which indicate that the proposed judgment is inappropriate, improper, or inadequate" or that the remedy selected by EPA is arbitrary, capricious or otherwise not in accordance with law. *See*, 42 U.S.C. § 9622(d)(2)(B). Indeed, the sole set of comments received did not even address the proposed revisions to the Decree itself, but rather was limited to certain determinations made by EPA and MPCA in implementing the selected remedy through the proposed Remedial Action Plan,

The State of Minnesota does not oppose entry of the proposed Amended Consent Decree. Pursuant to Paragraph 103 of the Amended Consent Decree, the City of St. Louis Park has consented to its entry.

//

//

//

//

//

//

THEREFORE, the United States respectfully requests that the Court enter the proposed Amended Consent Decree.

Respectfully submitted,

BRUCE S. GELBER
Deputy Assistant Attorney General
Environment and Natural Resources Division


     /s Jeffrey A. Spector            .
JEFFREY A. SPECTOR
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7511
(202) 514-4432
Jeffrey.Spector@usdoj.gov


ERICA H. MacDONALD
United States Attorney
District of Minnesota
FRIEDRICH A.P. SIEKERT
Assistant United States Attorney
Atty. No. 0142013
District of Minnesota
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN  55415
(612) 664-5697
Fred.Siekert@usdoj.gov


OF COUNSEL:

Steven Kaiser
Associate Regional Counsel
U.S. EPA REGION 5
77 West Jackson Boulevard
Mail Code: C-14J
Chicago, IL 60604-3507

## **CERTIFICATE OF SERVICE**

  I hereby certify that a copy of the foregoing *United States of America's Motion to Enter Proposed Amended Consent Decree* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties and public commenters will be served by email. Parties may access this filing through the Court's system.

| | |
|---|---|
|  4/13/20  |  /s Jeffrey A. Spector  |
| Date | Jeffrey A. Spector |