UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| United States of America, | ) | Court File No. 4:80-cv-469 (PAM/KMM) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| State of Minnesota, by its Attorney General | ) | |
| Hubert H. Humphrey, III, its Department of | ) | |
| Health, and its Pollution Control Agency, | ) | |
| | ) | **CERCLA SECTION 113(i)** |
| Plaintiff- Intervenor, | ) | **INTERVENORS DAIKIN APPLIED** |
| | ) | **AMERICAS, INC. AND SUPER** |
| | ) | **RADIATOR COILS LP'S JOINT** |
| v. | ) | **MEMORANDUM OF LAW IN** |
| | ) | **SUPPORT OF JOINT MOTION TO** |
| Reilly Tar & Chemical Corporation; | ) | **INTERVENE FOR THE LIMITED** |
| Housing and Redevelopment Authority of | ) | **PURPOSE OF OPPOSING** |
| St. Louis Park; Oak Park Village Associates; | ) | **ENTRY OF THE AMENDED CONSENT** |
| Rustic Oaks Condominium Inc.; and | ) | **DECREE** |
| Phillip's Investment Co., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| City of St. Louis Park, | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| v. | ) | |
| | ) | |
| Reilly Tar & Chemical Corporation, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| City of Hopkins, | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| | ) | |

| | |
|---|---|
| v. | ) |
| | ) |
| Reilly Tar & Chemical Corporation, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| Daikin Applied Americas, Inc. and | ) |
| Super Radiator Coils LP, | ) |
| | ) |
| Prospective-Limited | ) |
| Intervenors. | ) |
| | ) |

---

Limited Intervenors Daikin Applied Americas, Inc. ("Daikin Applied") and Super Radiator Coils LP ("Super Radiator"), by and through their respective undersigned counsel, submit this Memorandum of Law in Support of their Joint Motion to Intervene for Limited Purpose of Opposing Entry of the Amended Consent Decree, pursuant to Section 113(i) (42 U.S.C. § 9613(i))[1] of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601-9675 ("CERCLA") and Rule 24 of the Federal Rules of Civil Procedure.

---

[1] CERCLA Section 113(i) provides an express statutory grant of intervention rights in CERCLA cases. Limited Intervenors seek intervention for the sole purpose of opposing entry of the proposed Amended Consent Decree because, among other things, the Amended Consent Decree makes inappropriate material changes to the obligations of the currently performing parties that pose an unreasonable risk to public health in the affected vicinity, increase pollution in the neighborhood, impair and impede Limited Intervenors' interests, and are not consistent with CERCLA.

# INTRODUCTION

The Reilly Tar Superfund Site ("Reilly Tar Site" or "Site") has been under United States Environmental Protection Agency ("EPA") jurisdiction under CERCLA almost since that statute was enacted in the early 1980s. In late 2019, the United States proposed to amend the existing Consent Decree for the Reilly Tar Site, lodged the proposed Amended Consent Decree, took public comment, and, on April 13, 2020, filed a Motion with this Court seeking approval and entry of the Amended Consent Decree.[2]

CERCLA Section 113(i) provides for intervention as of right to persons who have an interest in the subject matter of the litigation that may be impaired or impeded and is not adequately represented by the existing parties. 42 U.S.C. § 9613(i).[3] Limited Intervenors have been investigating and remediating contamination at a property owned in the past by Limited Intervenors or their predecessors at 6714 Walker Street ("6714 Walker") in St. Louis Park ("St. Louis Park" or the "City") under the auspices of the

---

[2] Limited Intervenors timely filed extensive comments with the DOJ, opposing some of the changes proposed in the Amended Consent Decree. The United States of America's Motion to Enter Proposed Amended Consent Decree [Doc. No. 37] includes a copy of Limited Intervenors' comments and the governments' responses to those comments. [Doc. Nos. 37-1 and 37-2, respectively]. The governments' responses are incomplete, contain material inaccuracies, and fail to reasonably rebut the problems with the proposed Amended Consent Decree, which Limited Intervenors will establish if their Motion for Limited Intervention is granted.

[3] "In any action commenced under this Act or under the Solid Waste Disposal Act in a court of the United States, any person may intervene as a matter of right when such person claims an interest relating to the subject of the action and is so situated that the disposition of the action may, as a practical matter, impair or impede the person's ability to protect that interest, unless the President or the State shows that the person's interest is adequately represented by existing parties." 42 USC § 9613(i).

0963639\305797262.v1

Minnesota Pollution Control Agency ("MPCA"). The MPCA has asserted that Limited Intervenors are legally liable for contamination at the 0.62-acre 6714 Walker property, which is about 1000 feet southeast and down gradient of the 80-plus acre Reilly Tar Site. Groundwater containing significant contamination from the Reilly Tar Site, including hazardous volatile organic compounds ("VOCs"), chlorinated volatile organic compounds ("CVOCs"), phenolics and polynuclear aromatic hydrocarbons ("PAHs"), are migrating from the former Reilly Tar manufacturing facility and its waste disposal bog[4] into, through and beyond 6714 Walker via aquifers beneath the surface, to the detriment of the neighborhoods east and south of the Reilly Tar Site and possibly beyond.

The proposed Amended Consent Decree does nothing to remediate or reduce the migration of PAHs, phenolics, VOCs, CVOCs, and other contamination from the Reilly Tar Site or from its waste disposal bog. In fact, it threatens to increase the migration of such contaminants towards 6714 Walker and throughout the neighborhood to the east of the Reilly Tar Site. If the Amended Consent Decree is approved, Limited Intervenors' costs

---

[4] The existing Consent Decree and the Amended Consent Decree both describe the Reilly Tar Site as real estate comprising some 80 acres, made up of a number of designated parcels, apparently adjacent to Walker Street on the south. However, the Reilly Tar Site's Record of Decision (ROD) and Remedy treat the neighboring bog, which was used for direct disposal of Reilly Tar manufacturing wastes for decades, as a part of the area to be addressed by response activity. *See, e.g.* U.S. Envtl. Prot. Agency, Reilly Tar & Chemical Corp. (St. Louis Park Plant) St. Louis Park, MN, Background, https://cumulis.epa.gov/supercpad/SiteProfiles/index.cfm?fuseaction=second.Cleanup&id =0503858#bkground (last visited June 2, 2020). In law and fact, a facility or site for CERCLA purposes is regarded as not only the physical factory, tank or other structure, but also ditches, pits, ponds and "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." CERCLA § 101(9), 42 U.S.C. § 9601(9).

0963639\305797262.v1

and time needed for cleanup at 6714 Walker will be significantly increased, and the property's condition further damaged, by the increased contamination entering 6714 Walker in an unencumbered and potentially perpetual flow/migration of VOCs, phenolics, CVOCs, and PAHs from the Reilly Tar Site. Environmental consulting firms engaged by Limited Intervenors have examined the available data and concluded that the increase in contamination from the Reilly Tar Site if the Amended Consent Decree is entered, will not only complicate the cleanup of 6714 Walker, but it will also threaten public health and likely create odor issues in the affected neighborhoods.

Limited Intervenors seek intervention for the purpose of showing the Court the damages to them and 6714 Walker and also demonstrating the damages and long-term threats to associated neighborhoods if the Amended Consent Decree is approved and entered. The Amended Consent Decree's remedial requirements are inconsistent with CERCLA's legal requirements[5] and threaten public health because: 1) they continue to allow and will increase the Reilly Tar Site contamination released into the neighborhood subsurface; and 2) they fail to provide for an investigation and remedial action plan addressing CVOC contamination and its migration from the Reilly Tar Site. Limited Intervenors accordingly will seek denial of the United States of America's Motion to Enter

---

[5] "Remedy" and "remedial action" include "those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment." 42 U.S.C. § 9601(24); *Thompson v. Andersen Window Corp.*, Civil No. 4-88-229, 1989 U.S. Dist. LEXIS 871, at *5-6 (D. Minn. Jan. 27, 1989).

0963639\305797262.v1

Proposed Amended Consent Decree [Doc. No. 37], if limited intervention is allowed.

Intervention for this limited purpose is consistent with CERCLA and the law of this Circuit. *United States v. Union Elec. Co.*, 64 F.3d 1152, 1158 (8th Cir. 1995). Since every existing party urges approval of the Amended Consent Decree, plainly there is no party protecting the interest of the neighborhood residents and property owners, including Limited Intervenors' legal interests in performing remediation at the 6714 Walker property without interference from Reilly Tar Site contamination.

Limited Intervenors have repeatedly attempted to explain to the EPA and the MPCA that the Reilly Tar Site is a major source of vinyl chloride and other CVOC-related chemical contaminants in the deeper Prairie du Chien aquifer. That deep aquifer serves as a major public drinking water source in St. Louis Park, Edina, and elsewhere. These agencies have inexplicably ignored the science-based studies supporting Limited Intervenors' concerns and suggested, without hydrogeological and environmental scientific evidence, that the Reilly Tar Site is not the source of VOC or CVOC contamination in the Prairie du Chien aquifer.[6] Although the Reilly Tar Site PAH plume is coincident with the larger VOC plume in the Prairie du Chien aquifer, the EPA and the MPCA assert the VOC plume is unrelated to Reilly Tar. This is inaccurate as is shown by Dr. Hahn's Expert Report, which is attached to the Declaration of Melinda W. Hahn, PHD

---

[6] For example, the latest 5 Year Review report of the agencies asserts "a larger . . . plume that encompasses the Reilly plume" is "not Site-related." U.S. Envtl. Prot. Agency, Minn. Pollution Control Agency, *Fifth Five-Year Review Report for Reilly Tar & Chemical Corp. (St. Louis Park Plant) Superfund Site Hennepin County, Minnesota* 21-22 (2016), available at https://semspub.epa.gov/work/05/509936.pdf. (last visited June 2, 2020).

0963639\305797262.v1

("Hahn Decl.") at Exhibit 2.

Additionally, there is evidence in the Reilly Tar Site record and test results of the Reilly Tar Site and vicinity that there is contamination from the Reilly Tar Site migrating into the shallower Drift and Platteville aquifers, which lie immediately below the land surface. This shallower contamination has spread throughout the neighborhood, which includes 6714 Walker. As Dr. Hahn's report shows, in addition to PAHs, phenolics, and naphthalene, there is considerable CVOC contamination coming from the Reilly Tar Site via these upper aquifers and impacting 6714 Walker. This upper aquifer contamination is complicating and increasing the cost of the Limited Intervenors' response and clean-up efforts at 6714 Walker, even as the EPA and the MPCA decline to recognize it as such.

The deliberate non-recognition of the role of the Reilly Tar Site in CVOC contamination has allowed the active parties at the Reilly Tar Site to avoid the need to respond to and protect the public against the CVOCs coming from the Site. This non-recognition is also allowing the EPA and the MPCA to unfairly shift the cost of responding to this CVOC contamination to others such as Limited Intervenors and property owners in the affected neighborhoods.

## RELEVANT BACKGROUND

### A.     Affected Interests.

In 2014, the MPCA identified Limited Intervenors as potentially responsible parties for investigation and remediation of suspected CVOC contamination at 6714 Walker, a small, approximately 0.62-acre piece of property. The MPCA's identification resulted in Limited Intervenors undertaking several investigations, addressing vapor intrusion there,

0963639\305797262.v1

and now, seeking to eliminate historic contamination at 6714 Walker. (*See* Declaration of Aaron Benker ("Benker Decl.")). This work has been proceeding for several years, and it will require several more years to complete. (*Id.*).

### B.    The Reilly Tar Site.[7]

The Reilly Tar Site is defined in the Superfund decision documents as an 80-acre site in St. Louis Park that was formerly owned and operated by the Reilly Tar and Chemical Corporation (RTCC). RTCC produced coal tar creosote using a distillation process and treated wood on-site with their products between 1917 and 1972. The manufacturing of creosote and other activity at the Reilly Tar Site resulted in releases of PAHs, phenolics, naphthalene, and other compounds.[8] Large quantities of these compounds were released over RTCC's operational period. The Superfund response has been historically focused on these compounds, although there is also clear evidence of the use of solvents or other chemicals containing CVOCs and VOCs at the Reilly Tar Site.

The Reilly Tar Site and its general vicinity is underlain with layers of rock and soils accumulated over eons of time. Many of these layers serve to one degree or another as an aquifer, *i.e.*, a groundwater bearing media. The hydrogeology is complex near the Reilly Tar Site. The Drift is the uppermost aquifer, characterized by sands, silts and clays. The

---

[7]  The facts and opinions set forth in this section are based on the Expert Report of Melinda Hahn, PHD (Hahn Decl., Ex. 2) unless otherwise noted.

[8]  The Reilly Tar Site operations are described by the EPA on its website pages devoted to the Reilly Tar Site. *Cf.* U.S. Envtl. Prot. Agency, <u>Reilly Tar & Chemical Corp. (St. Louis Park Plant) St. Louis Park, MN, Cleanup Activities</u>, <u>https://cumulis.epa.gov/supercpad/SiteProfiles/index.cfm?fuseaction=second.Cleanup&id=0503858#bkground</u> (last visited May 30, 2020).

0963639\305797262.v1

Drift is underlain by the limestone Platteville aquifer. The Glenwood confining bed is a relatively thin unit that underlies the Platteville at approximately 100 feet below the surface. Below the Glenwood are the St. Peter aquifer and confining bed. Then the Prairie du Chien/Jordan aquifer, which is used as a public drinking water supply, lies between approximately 250 and 500 feet below the surface. The Ironton-Galesville (now called the Wonewoc) aquifer is even deeper, at approximately 700 feet below ground surface.

Dr. Melinda Hahn's Expert Report includes a graphic of the layers and aquifers beneath the Reilly Tar Site and its vicinity. It is excerpted here for the Court's convenience.



The graphic (Fig. 3) shows the Drift and Platteville are the uppermost layers, while the Prairie du Chien is much deeper beneath the surface.

As Dr. Hahn's Report shows, three different modes of chemical releases occurred as a result of RTCC operations: 1) direct discharge of waste into site deep wells W23 and

0963639\305797262.v1

W105, which were open to deep drinking water aquifers, including the Prairie du Chien; 2) direct discharge of wastewater to the peat bog to the south and southeast of the Reilly Tar Site; and 3) surface spills of chemical substances during the RTCC operating period. As such, the footprint of Reilly Tar Site-related contaminants extends off-site due to direct discharge to the low-lying peat bog adjacent to the south and subsequent migration in the Drift and Platteville aquifers. Also, due to the high transmissivity of the disposal wells on the Reilly Tar Site, the Site contamination has impacted deep drinking water aquifers, *viz.* the Prairie du Chien/Jordan units. Many square miles of drinking water aquifers continue to be impacted by the former RTCC operations.

Tar and related contamination were observed from the Platteville aquifer to the Ironton-Galesville aquifer in deep multi-aquifer wells W23 and W105 on the Reilly Tar Site in the late 1970s/early 1980s. A multi-aquifer well is a well that is open to more than one aquifer and allows water to flow freely between aquifers in response to pressure differences. In 1978, the USGS determined that contaminated water was leaking into the Prairie du Chien aquifer from well W23 at the rate of 150 gallons per minute. Leakage of contaminated groundwater within multi-aquifer wells was widespread. The USGS investigation identified 25 multi-aquifer wells in the vicinity of the Reilly Tar Site, including four (out of nine that were tested) with demonstrated flow of contaminated water from the Platteville and St. Peter aquifers to the Prairie du Chien aquifer.

Surface water discharge was also a source of contamination from operations at the Reilly Tar Site. Wastewater from Reilly Tar Site operations was discharged to wetlands or bogs, immediately south of the facility. Although the bogs are located outside of the former

0963639\305797262.v1

Reilly Tar Site facility boundary, they contain significant soil and groundwater contamination from the Reilly Tar Site and represent a continuing source of contamination to the Drift and Platteville aquifers. PAH, naphthalene, and non-aqueous phase liquids were observed in shallow borings conducted in support of the recent Highway 7/Louisiana Avenue interchange construction project. Deeper Drift and Platteville groundwater samples collected at the southeast edge of the former bog (W420, W421, and W18) contained CVOCs: tetrachloroethene (PCE), trichloroethene (TCE), cis-1,2-dichloroethene (cisDCE) and vinyl chloride (VC). PCE and TCE are common industrial and commercial solvents used for degreasing and cleaning, including dry cleaning, and were often used in machine shops, manufacturing, and dry-cleaning operations historically.

CVOC compounds are present both in Reilly Tar Site deep wells W23 and W105, and in the former wastewater bog area (as evidenced by W420, W421, and W18). CVOCs were also found in soil vapor and indoor air in apartment buildings located on the former Reilly Tar Site, but they have never been addressed in the Reilly Tar Site remedial response. The wastewater bog and immediate down gradient areas (to the east) are largely uninvestigated, with the exception of a few wells in each of the first three aquifers located at the southeastern edge of the former bog location.

### C. Environmental Impacts of Reilly Tar Releases.

Respected Environmental Engineer Dr. Melinda Hahn (Ph.D. John Hopkins University) has extensively studied available data and has concluded in relevant part that:[9]

---

[9] *See* Hahn Decl., Ex. 2, Expert Report of Melinda Hahn, PHD.

0963639\305797262.v1

1.      Former Reilly Tar Site operations represent a significant source of CVOCs and PAHs to the Prairie du Chien-Jordan aquifer, and CVOCs in the Prairie du Chien-Jordan aquifer migrate beneath the property at 6714 Walker and beyond to the St. Louis Park water supply wells, as depicted below:



FIGURE 1 -- Prairie du Chien Water Levels and Contaminant Concentrations in the Reilly Tar Monitoring Network

2.      The former wastewater disposal bog on the southern part of the Reilly Tar Site represents a source of PAH, CVOC and other contamination to the Platteville aquifer, which flows under 6714 Walker and beyond, as depicted below:

0963639\305797262.v1



Dr. Hahn's opinion shows that the Amended Consent Decree would authorize the EPA and the City to take no further action to remediate or mitigate this known contamination of the two aquifers and migration from the Reilly Tar Site. In Dr. Hahn's opinion, by permitting no further action, migration of VOCs, phenolics, CVOCs and PAHs from the Reilly Tar Site to 6714 Walker and water supply wells in St. Louis Park and Edina will increase and continue unabated. (*See* Hahn Decl., Ex. 2. at Section 2 - Opinions).

**D.    Impacts of the Amended Consent Decree on Limited Intervenors and Affected Neighborhood Environment.**

The proposed Amended Consent Decree[10] impairs or impedes Limited Intervenors' interests in the following specific respects:

1.    The proposed Amended Consent Decree (and its integrated proposed Amended Remedial Action Plan) would change the approved remedy for the uppermost two aquifers in St. Louis Park (the so-called Drift and the Platteville Aquifers)[11] by eliminating the existing containment of the flow of VOCs, phenolics, CVOCs, PAHs and

---

[10]   The DOJ contends in its Motion to Enter Proposed Amended Consent Decree and in informal communications with counsel for Limited Intervenors, that Limited Intervenors filed comments on the RAP (Remedial Action Plan) and its protocols, and not on the Amended Consent Decree. This is a misleading argument. By definition of its own terms, the Amended Consent Decree includes the RAP and other Appendices of the decree. According to the definitions in the Amended Consent Decree:

> "Amended Consent Decree" or "Amended CD" shall mean this consent decree and all appendices attached hereto (listed in Section XXII). In the event of conflict between this Amended CD and any appendix, this Amended CD shall control.

> "Amended Remedial Action Plan" or "Amended RAP" shall mean the document describing the activities to be undertaken by EPA, the State, and the City to implement the Remedial Action and ongoing O&M of the remedy, attached hereto as Appendix A.

(United States of America's Notice of Lodging of Proposed Am. Consent Decree, p. 4, Nov. 4, 2019 [Document 36-1]).

[11]   These two aquifers were deemed a distinct "operating unit" or OU covering the "northern area" neighborhood east and southeast of the Reilly Tar Site that has its own distinct CERCLA remedy under EPA's regulations. *See* U.S. Envtl. Prot. Agency, *Decision Summary for the Record of Decision Reilly Tar and Chemical Company Corporation Site* (1995), available at https://semspub.epa.gov/work/05/234625.pdf. (last visited June 2, 2020).

-14-

other contamination from the Reilly Tar Site into those aquifers by extraction wells. It will allow the City to limit its work to only monitoring. Turning off the containment wells will allow migration of significant contamination away from the Reilly Tar Site and into 6714 Walker and surrounding neighborhoods unabated. (Hahn Decl., Ex. 2).

2.    Substantial VOC, phenolic, CVOC, and PAH contamination is still present at and under the Reilly Tar Site for which the Site, including its bog, demonstrably is the source. (Hahn Decl., Ex. 2). This contamination continues to be released to the environment, including especially into the deeper Drift aquifer, the Platteville aquifer, and, by still open wells, to the Prairie du Chien aquifer[12]. (*Id.*). In addition, significant PAH and other byproduct releases from the Reilly Tar Site have reached and contaminated 6714 Walker. CERCLA plainly makes cleanup and remediation of these contaminants entering 6714 Walker the legal responsibility of the responsible parties at the Reilly Tar Site. The proposal of the EPA, the MPCA, and the City would improperly ignore this responsibility to undertake and bear the cost of cleaning up these Reilly Tar Site contaminants. It also threatens to inequitably shift the cost to offsite parties such as Limited Intervenors.

3.    The current Consent Decree identifies and defines "Chemical Substances" at the Site to include "solvents and degreasers" to be addressed if found there. (Consent Decree entered September 5, 1986, at p. 23). The proposed Amended Consent

---

[12]  For further data and documentation of the environmental impacts described in this Memorandum, and for a more detailed explanation of the associated risks to the public that Limited Intervenors have identified, see Comment of the Limited Intervenors attached to the United States of America's Motion to Enter Proposed Amended Consent Decree [Doc. No. 37-1] , especially pages 3 through 12.

0963639\305797262.v1

Decree/Remedial Action Plan does <u>not</u> include them. Thus, although their presence is evident, and the agencies and the City, as site owner, have been obligated to address CVOCs and VOCs at the Reilly Tar Site for decades, they have not done so. Their inattention to these chemicals of interest has contributed to and is exacerbating an area-wide plume that is still radiating from the Reilly Tar Site disposal well to the Prairie du Chien aquifer.[13] Under the proposed amendments to the Consent Decree, monitoring for VOCs and CVOCs would cease. The Amended Consent Decree would, in effect, excuse the active parties at the Reilly Tar Site from controlling and remediating these harmful contaminants originating at the Site.

4.      Discontinuance of monitoring for VOCs and CVOCs will deprive Limited Intervenors and the public of scientific testing and information needed to understand the impact of the Reilly Tar Site on 6714 Walker, the community, the threat it poses in the drinking water aquifers of the area, and remediation efforts. (Hahn Decl., Ex. 2).

5.      The proposed Amended Consent Decree/Remedial Action Plan enables the City to discontinue pumping of extraction wells in the uppermost aquifers. The lessening of pumping requirements will likely cause migration from the Reilly Tar Site to increase and spread the Reilly Tar Site contamination problem down gradient farther into the neighborhood. PAHs from the Reilly Tar Site already extend well beyond 6714 Walker Street in the deep Drift and Platteville aquifers. (Hahn Decl., Ex. 2).

---

[13]   The Reilly Tar Site is the most significant apparent source of VOC contamination in the Prairie du Chien aquifer. The highest vinyl chloride concentration in the County is at the base of the Site, associated with well W23. W18, at the southern edge of the Reilly Tar Site, has the area's highest Platteville aquifer readings. (*See* Hahn Decl., Ex. 2).

0963639\305797262.v1

6.      The proposed Amended Consent Decree/Remedial Action Plan will result in increased and unabated flow of contamination to and under 6714 Walker. This increase will complicate and increase the costs of remediation at that property at the expense of Limited Intervenors and to the detriment of the property owner. (*See* Benker Decl.).

7.      The proposed Amended Consent Decree/Remedial Action Plan will deprive owners and operators of down gradient neighboring properties and parties of their right to remediate contamination free of the continuing trespass caused by migration of contamination from the Reilly Tar Site. It may also unfairly deprive Limited Intervenors of rights of contribution against, *inter alia*, the City for the increased flow and spread of VOCs, phenolics, CVOCs, PAHs, naphthalenes, and other contaminants that the Amended Consent Decree and Amended Remedial Action Plan will permit to be released from the Reilly Tar Site to the neighborhood via the uppermost aquifers.[14]

8.      By choosing to ignore the Reilly Tar Site risks from CVOC contamination, the EPA puts the neighborhoods east and south of the Reilly Tar Site at risk, and a major source of the community's drinking water contamination is given a free pass from responsibility. In so acting, the EPA has violated its own rules. Specifically, the currently approved remedy for the Drift and Platteville aquifers was developed in disregard of basic requirements of CERCLA site response law, regulations and applicable EPA guidance. *See, e.g.*, 40 C.F.R. § 300(d). There was a failure by the parties to assess and test for the

---

[14]    *See, e.g.*, *U.S. v Union Electric Co.,* 64 F.3d 1152, 1165 (8th Cir. 1995); *City of Emeryville v Robinson*, 621 F.3d 1251, 1258-1260 (9th Cir. 2010); *see also* proposed Amended Consent Decree, XVII. Effect of Settlement; Contribution [Doc. 36-1].

0963639\305797262.v1

presence of the full variety of contaminants at the Reilly Tar Site, which, if present, posed a serious risk to the environment and public health. As a result, an entire class of hazardous chemicals was ignored and continues to be ignored: CVOCs and VOCs. This occurred despite the identification of solvents as chemical substances to be considered as possibly within the scope of the 1986 Consent Decree [Consent Decree, filed September 5, 1986, at p. 23] the documented presence of machine shops on the site, and the common practice of using solvents in such facilities. In addition to the foregoing omissions, the currently approved remedy for the Drift and Platteville aquifers (OU5), adopted in 1995 by the EPA, also fundamentally fails to provide the required permanence of remedy the SARA amendments[15] to CERCLA have demanded since well before the Platteville operating unit remedy was last studied or chosen.

9.      Multi-aquifer wells on/or related to the Reilly Tar Site and its historical waste disposal practices are the apparent source of the Prairie du Chien contamination.[16] Limited Intervenors are prepared to show that these wells have not all been identified or permanently closed by the City or state in a proper manner, contrary to the requirements of the 1986 Consent Decree. The contamination from some multi-aquifer wells still continues.

---

[15]  Superfund Amendments and Reauthorization Act of 1986, 99 P.L. 499, 100 Stat. 1613, 99 P.L. 499, 100 Stat. 1613.

[16]   U.S. Dep't of the Interior Geological Survey, *Assessment of Ground-Water Contamination by Coal-Tar Derivatives, St. Louis Park Area, Minnesota* (1984), available at https://pubs.usgs.gov/of/1984/0867/report.pdf; U.S. Geological Survey, *Hydrogeology and Ground-Water Flow of the Drift and Platteville Aquifer System, St. Louis Park, Minnesota* (1995), available at https://pubs.usgs.gov/wri/1994/4204/report.pdf. (last visited June 2, 2020).

0963639\305797262.v1

(Hahn Decl., Ex. 2). The task of identifying the multi-aquifer wells and assessing the related impacts should be a pre-requisite to any amendment of the Consent Decree and should be completed on a rigorous time-table in order to protect public health.

10.    Contrary to representations by the United States to this Court that the changes it seeks in the Amended Consent Decree are "primarily ministerial" (United States of America's Mot. to Enter Proposed Am. Consent Decree at p. 6 [Doc. No. 37]), the changes subject to the Motion to Enter Proposed Amended Consent Decree are numerous and some are highly significant. For example, the City would be expressly granted protection from contribution claims of third parties such as Limited Intervenors. (*Id.* at pp. 6-7). Given that the remedial activity to date has failed to prevent the invasion of the surrounding neighborhood with contaminants in the subsurface, no contribution protection is warranted at this time.

If the Court were to so require, Limited Intervenors can and would demonstrate the above impacts on 6714 Walker from the Reilly Tar Site through expert testimony, test results, and documentary evidence. The Declarations of Dr. Melinda Hahn and Mr. Aaron Benker verify these impacts. If intervention is allowed, Limited Intervenors will also be prepared to show the Court that important changes in the proposed Amended Consent Decree create unreasonable risks to public health in the affected vicinity, are not consistent with the goals of CERCLA, and their development and proposed use at the Reilly Tar Site are inconsistent with and/or contrary to the rules and guidance governing the administration of the law and site remedy decisions. Limited Intervenors will also document to the Court that the governments' analysis of Limited Intervenors' comments was arbitrary, capricious,

0963639\305797262.v1

incomplete, and contrary to what is required by law.

## STANDARD OF REVIEW

As a general rule, Rule 24 of the Federal Rules of Civil Procedure governs both interventions as of right and permissive intervention. Rule 24(a) provides for intervention as of right as follows:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

CERCLA Section 113(i) provides a right to intervene that is tailored for CERCLA litigation such as this case. Section 113(i) establishes standards for intervention in CERCLA actions comparable to those found in Rule 24(a)(2), but not identical:

> In any action commenced under this chapter or under the Solid Waste Disposal Act [42 U.S.C. § 6901 et. seq.] in a court of the United States, any person may intervene as a matter of right when such person claims an interest relating to the subject of the action and is so situated that the disposition of the action may, as a practical matter, impair or impede the person's ability to protect that interest, unless the President or the State shows that the person's interest is adequately represented by existing parties.

Where two statutory or regulatory provisions may apply, the specific statutory provision applies, rather than the general. In *Morales v. TWA*, a case involving the preemption provision in the Airline Deregulation Act, the Supreme Court stated that "it is a commonplace of statutory construction that the specific governs the general." 504 U.S.

0963639\305797262.v1

374, 384-85, 112 S. Ct. 2031, 2037 (1992). Similarly, in *Crawford Fitting Co. v. J. T. Gibbons, Inc*., the Supreme Court explained, "[a]s always, where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." 482 U.S. 437, 445, 107 S. Ct. 2494, 2499 (1987) (quotation omitted). And in this Circuit, "[a]s the Supreme Court has noted, specific statutes control over general statutes, regardless of the date of enactment." *United States v. Sigillito*, 759 F.3d 913, 929 (8th Cir. 2014).

Here, the subject matter of the litigation is application of the CERCLA statute to control contamination released at and from the Reilly Tar Site and the obligation of those with legal responsibility for the Site to remediate that contamination. Limited Intervenors' interest in a cleanup of the separate, much smaller 6714 Walker site, which is nearby and down gradient from the Reilly Tar Site, is directly impaired, complicated and damaged by the increased subsurface migration from the Reilly Tar Site that the Amended Consent Decree would allow. All existing parties favor the Amended Consent Decree that Limited Intervenors seek to oppose.

CERCLA Section 113(i) does not place the same burdens on intervenors as Rule 24. The burden to show that existing parties adequately represent the prospective intervenor's interest is allocated to the President or the State under Section 113(i) of CERCLA, whereas under Rule 24(a)(2) the party seeking to intervene has the burden to show that no existing party adequately represents its interest. *Union Elec. Co.*, 64 F.3d at 1157-1158.

Under either Rule 24 or CERCLA Section 113(i), Limited Intervenors should be

permitted to intervene in this matter as of right because they have a recognized interest that will be impaired if the Amended Consent Decree and incorporated proposed Amended Remedial Action Plan are entered.[17] The CERCLA-specific language of Section 113(i) controls and should cause the Court to grant Limited Intervenors' Motion, because their interests are not adequately protected by any of the existing parties. All existing parties favor the Amended Consent Decree while Limited Intervenors oppose it.[18] Moreover, the United States will not be able to show that an existing party represents Limited Intervenors' interests given that each active governmental party has either: ignored or rejected Limited Intervenors' objections to the Amended Consent Decree or refused to permit the remediation of 6714 Walker to be carried out as environmental consultants have advised it should.

---

[17]  In *Union Elec. Co.*, 64 F.3d at 1170, the Eighth Circuit allowed for intervention under both FRCP 24(a) and CERCLA Section 113(i).

[18]  As a threshold issued, Limited Intervenors' Motion to Intervene is timely as the United States only made public and just submitted to the Court its Responsiveness Summary to Daikin Applied and Super Radiator's Comments Objecting to Proposed Amended Consent Decree on April 13, 2020, in which the United States dismissed out of hand Daikin Applied and Super Radiator's concerns. At the same time, the United States submitted its Motion to Enter Proposed Amended Consent Decree, counsel for Limited Intervenors notified both the DOJ and the Court of their intent to file a motion to intervene within three days of the filing by the DOJ of its Motion to Enter.

0963639\305797262.v1

## LEGAL ANALYSIS

**A.** **Limited Intervenors have a recognized interest in protecting their work at 6714 Walker from outside contamination and in minimizing costs to 6714 Walker and other affected properties nearby from Reilly Tar Site contamination. They also may have contribution rights that the Amended Consent Decree would take away.**

Limited Intervenors are working to clean up the contamination at 6714 Walker. (*See* Benker Decl.). They have a right to work free of outside trespass and contamination of 6714 Walker caused by others, including contamination from the Reilly Tar Site. *City of Lake Elmo v. 3M Co.*, 237 F. Supp. 3d 877 (D. Minn. 2017); *Johnson v. Paynesville Farmers Union Coop. Oil Co.*, 817 N.W.2d 693 (Minn. 2012). Limited Intervenors also have a protectable right to work to benefit the current owner of 6714 Walker and to protect themselves from possible liabilities and adverse associations of their lawful and reputable businesses with past pollution occurrences not caused by them. They also have a recognized interest in limiting the contribution protection the City would receive under the proposed Amended Consent Decree for the increase in amounts and flows of VOCs and other contamination the Amended Consent Decree will authorize. Finally, Limited Intervenors also have a recognized interest in the prompt completion of the remediation of 6714 Walker.

"An interest is cognizable under Rule 24(a)(2) only where it is 'direct, substantial, and legally protectable.'" *Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC*, 485 F.3d 1006, 1008 (8th Cir. 2007) (quoting *Union Elec. Co.*, 64 F.3d at 1161). "Although the intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation." *Union Elec. Co.*,

-23-

0963639\305797262.v1

64 F.3d at 1162. But the asserted interest cannot rest "upon the occurrence of a sequence of events before it becomes colorable." *Med. Liab. Mut. Ins. Co.*, 485 F.3d at 1008. The applicant "must . . . demonstrate that the subject matter of the action affects its interests in a direct rather than tangential way." *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 836 (8th Cir. 2009).

The applicant for intervention "must have a 'significantly protectable interest,' meaning that '(1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims.'" *United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1149 (9th Cir. 2010) (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 440-41 (9th Cir. 2006)). "In determining whether intervention is appropriate, courts are guided primarily by practical and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

Limited Intervenors' interests are serious, existing, legally protectable, and threatened by the proposed terms of the Amended Consent Decree. (*See* Benker Decl. and Hahn Decl. Ex. 2). They deserve the Court's consideration and redress.

### B.   Limited Intervenors' recognized interests are impaired if the Consent Decree and its incorporated Remedial Action Plan are amended as proposed.

The second factor "is whether the interest of the applicant for intervention is one that might be impaired by the disposition of the litigation." *Union Elec. Co.*, 64 F.3d at 1161. the intervenor is not required to show that it "is or may be bound by the judgment in the action" but instead must show that "the disposition of the action may as a practical

0963639\305797262.v1

matter impair or impede the applicant's ability to protect [its] interest." *Id.* (quotation omitted). Limited Intervenors need not show that, but for their intervention, "[their] interest 'would be' impaired by the operation of res judicata, collateral estoppel, or stare decisis, but rather only that [their] interest 'may so' be impaired." *Id.* (quotation omitted).

As discussed above, Limited Intervenors are engaged in remediation of the 0.62 acre property at 6714 Walker. The objective of the remediation is to reduce or eliminate VOC and CVOC source material on that site to the extent practicable to reduce the potential impact to the environment and public health. If the Amended Consent Decree is entered, there will be an increase in VOCs and CVOCs coming into the subsurface of the 6714 Walker property. This has complicated and will further complicate and make the cleanup of 6714 Walker more expensive for Limited Intervenors. (Benker Decl.). Limited Intervenors would ordinarily have a valid claim of contribution against the persons causing this contamination from upgradient at 6714 Walker, but if the contamination is carried out under color of contribution protection from a consent decree in a CERCLA case, the City will claim immunity from contribution. Thus, the Court's approval of the Amended Consent Decree as submitted threatens to diminish valuable rights and claims of Limited Intervenors.

In addition to reduced rights of contribution, Limited Intervenors' interests are aligned with and include protection of the owner of 6714 Walker and other owners and occupants of private property in the down gradient neighborhood, none of who are parties to this monumental case, and most of who are likely unaware of these threats to their property interests, given governmental pronouncements of the purported success of the

remedy to date.

In contrast with Limited Intervenors' and neighborhood interests in protection from the historical and ongoing contamination threats posed by the Reilly Tar Site, it appears that, at this time, the City's interest is not protection of the environment but rather lowering the costs it faces as a result of its assumption of the obligations of the Reilly Tar Site. Parties to the 1986 Consent Decree contributed to the contamination of the Prairie du Chien and Jordan aquifers by, among other things, failing to: 1) properly characterize on-site contamination; 2) find and close all multi-aquifer wells that are the main source of contamination to those aquifers; 3) actively investigate the off-site contamination and migration of VOCs, phenolics, CVOCs, and PAHs, and 4) require the above steps be taken by the appropriate parties. The EPA, the MPCA and the City's amendments to the Consent Decree would unfairly cause the cost of cleaning up these Reilly Tar Site contaminants to fall on down gradient offsite parties, including Limited Intervenors.

### C.   Limited Intervenors' recognized interests are inadequately represented by the existing parties.

Limited Intervenors' recognized interests are not adequately represented by the existing parties. Under Fed. R. Civ. P. 24(a)(2), "persons seeking intervention need only carry a 'minimal' burden of showing that their interests are inadequately represented by the existing parties." *Mille Lacs Band of Indians v. Minnesota*, 989 F.2d 994, 999 (8th Cir. 1993). Under CERCLA Section 113(i), the burden is "on the President or the State to show that the potential intervenor's interest is adequately represented by the existing parties." *Union Elec. Co.*, 64 F.3d at 1157.

0963639\305797262.v1

There is no party presently in this case that is a neighboring landowner of private property or that otherwise represents an interest seeking or defending its quiet enjoyment. Nor is any party to the case opposing entry of the Amended Consent Decree. In addition, the provision of contribution protection to the City is directly adverse to Limited Intervenors' interests. Under these circumstances, the Court should hear whether its approval of the Amended Consent Decree will adversely impact Limited Intervenors and others not in the litigation by virtue of the substantial subsurface contamination migrating from the Reilly Tar Site.

## **CONCLUSION**

Limited Intervenors and the private property owners and residents in the neighborhoods affected by the Reilly Tar Site deserve protection of their health and the environment, as required by CERCLA. Without this limited intervention, the Court risks allowing legally deficient protection of the environment to continue without hearing the expert analyses to be offered by Limited Intervenors at a hearing on the merits of United States of America's Motion to enter the Amended Consent Decree.

CERCLA Section 113(i) specifically provides: "*any person may intervene as a matter of right when such person claims an interest relating to the subject of the action and is so situated that the disposition of the action may, as a practical matter, impair or impede the person's ability to protect that interest.*" (Emphasis added.) Limited Intervenors' remediation efforts at 6714 Walker are already being impacted, and their lawful and protectable interests will be further adversely affected if the Amended Consent Decree is entered as proposed and if CVOCs are not addressed at the Reilly Tar Site. If permitted to

intervene, Limited Intervenors will present scientifically supported evidence, which will allow the Court to make a well-informed decision on the ultimate merits of whether to enter the Amended Consent Decree.

Respectfully submitted,

Dated: June 2, 2020

**ATTORNEYS FOR LIMITED INTERVENOR DAIKIN APPLIED AMERICAS, INC.**

*s/M. Annie Santos*
M. Annie Santos, Reg. No. 0389206
Hinshaw & Culbertson LLP
333 South Seventh Street, Suite 2000
Minneapolis, MN 55402
Telephone: 612-333-3434
Fax: 612-334-8888
asantos@hinshawlaw.com

Harvey M. Sheldon *Admitted Pro Hac Vice*
Hinshaw & Culbertson LLP
One East Broward Blvd., Ste. 1010
Ft. Lauderdale, FL 33301
Telephone: 954-375-1155
hsheldon@hinshawlaw.com

Thomas D. Lupo *Admitted Pro Hac Vice*
Hinshaw & Culbertson LLP
151 North Franklin Street, Ste. 2500
Chicago, IL 60606
Telephone: 312-704-3000
tlupo@hinshawlaw.com

Charles B. Rogers, Reg. No. 130588
Taft Stettinius & Hollister LLP
2200 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: 612-977-8400
Fax: 612-977-8650
crogers@taftlaw.com

**ATTORNEYS FOR LIMITED INTERVENOR SUPER RADIATOR COILS LP**

*s/William P. Hefner*
William P. Hefner, Reg. No. 258349
The Environmental Law Group
2263 Waters Drive
Mendota Heights, MN 55120
Telephone: 612-623-2362
Fax: 612-378-3737
whefner@envirolawgroup.com

0963639\305797262.v1