UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, ) | Court File No. 4:80-cv-469 (PAM/FEB) |
| ) | |
| Plaintiff, ) | |
| ) | |
| and ) | |
| ) | |
| State of Minnesota, by its Attorney General ) | **DECLARATION IN SUPPORT OF** |
| Hubert H. Humphrey, III, its Department of ) | **DAIKIN APPLIED AMERICAS, INC.** |
| Health, and its Pollution Control Agency, ) | **AND SUPER RADIATOR COILS LP'S** |
| ) | **JOINT MOTION TO INTERVENE FOR** |
| Plaintiff- Intervenor, ) | **THE LIMITED PURPOSE OF** |
| ) | **OPPOSING** |
| v. ) | **ENTRY OF THE AMENDED CONSENT** |
| ) | **DECREE** |
| Reilly Tar & Chemical Corporation; Housing ) | |
| and Redevelopment Authority of St. Louis ) | |
| Park; Oak Park Village Associates; Rustic ) | |
| Oaks Condominium Inc.; and Phillip's ) | |
| Investment Co., ) | |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | |
| ) | |
| City of St. Louis Park, ) | |
| ) | |
| v. ) | |
| ) | |
| Reilly Tar & Chemical Corporation, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| City of Hopkins, ) | |
| ) | |
| Plaintiff-Intervenor, ) | |
| ) | |
| v. ) | |

|  |  |
|---|---|
| Reilly Tar & Chemical Corporation, | ) |
|  | ) |
| Defendant, | ) |
|  | ) |
| and | ) |
|  | ) |
| Daikin Applied Americas, Inc. and | ) |
| Super Radiator Coils LP, | ) |
|  | ) |
| Prospective-Limited Intervenors. |  |

_____

The undersigned declares, under penalty of perjury, that the following is true and correct:

1. I am a Remediation and Real Estate Group Manager and Principal with Wenck Associates, Inc. ("Wenck"), based out of Maple Plain, Minnesota. I have over 22 years of environmental consulting experience, specializing in site investigation, remediation, Brownfields redevelopment, and environmental compliance.

2. In 2013, the Environmental Law Group, Ltd. ("ELG") retained Wenck to assist ELG in its provision of confidential legal advice to Super Radiator Coils Limited Partnership (SRCLP). Specifically, ELG retained Wenck to provide consulting and engineering advice to ELG and SRCLP on the latter's remediation, in cooperation with Daikin Applied Americas Inc. ("Daikin"), of 6714 Walker Street, St. Louis Park, Minnesota ("the 6714 Walker Site" or "the Site"). I have extensive knowledge of the investigative and remedial work undertaken and planned for the 6714 Walker Site as a result of my involvement for over six years at the Site, working alongside consultants from GHD, which was retained by Daikin.

3. The 6714 Walker Site is located in an historically heavily industrialized neighborhood. In 2006, the Minnesota Pollution Control Agency's consultant identified 82 locations near the Site as potential chlorinated volatile organic carbon (CVOC) sources, with several machine shops, dry cleaning and other manufacturing facilities located in close proximity to the Site. The Site is currently surrounded by mixed commercial, industrial, and residential buildings.

4. The Site itself consists of 0.6 acres of land with a single building, to which additions were made in the 1950s and 1960s, that housed metal fabrication operations from approximately 1949 – 1998. The metal fabrication operations at the Site used perchloroethylene (PCE) as a solvent to clean parts for at least some period of time.

5. Since 2015, SRCLP and Daikin (hereafter, "the Remediating Parties") have undertaken extensive investigation and remediation efforts at the 6714 Walker Site. Voluntary investigations of the Site have included a Site Investigation to examine the glacial drift groundwater quality conditions surrounding the Site, a Source Area Investigation to identify and delineate the suspected source of soil vapor and groundwater contamination underneath the building, and a soil and groundwater investigation of the parking area on the Site's north side. The Remediating Parties also have reviewed significant on-site and area wide investigation data generated by consultants for the MPCA, the United States Geological Survey (USGS), and private parties. The data generated by the Remediating Parties (and others) were used to develop the Site's conceptual site model.

6. These investigations revealed the existence of PCE in the soils and shallow groundwater at the Site. The investigations also revealed that groundwater quality beneath

the 6714 Walker Site is affected materially by contaminants from upgradient CVOC source(s) not associated with historical operations at the 6714 Walker Site, as discussed in more detail below. In addition, significant CVOC contamination still exists up-gradient from the Site, relative to groundwater flow direction. Much of the evidence of the up-gradient contamination come from monitoring and remediation well sample data associated with the Reilly Tar Superfund Site in St. Louis Park ("the Reilly Tar Site"), while other evidence comes from the MPCA's investigations of sources other than Reilly Tar.

7. In response to the on-site findings, the Remediating Parties have undertaken a series of remedial actions to remove PCE from the soils and shallow groundwater beneath and near the 6714 Walker Site. The first remedial action taken by the Parties was to install and operate a Soil Vapor Extraction (SVE) system to address PCE in the soils beneath the building in an identified source area on the Site. The SVE has been very successful in addressing soil contamination beneath and vapors within the building. Since SVE operations began in May 2016, PCE sub-slab vapor concentrations have decreased up to three orders of magnitude and removed PCE mass in the unsaturated soil. The SVE continues to protect the occupants of the building as it removes PCE mass.

8. The Remediating Parties have also attempted to further address contamination in the shallow groundwater beneath the 6714 Walker Site through a shallow groundwater remediation plan. In February 2018, the Parties submitted to the Minnesota Pollution Control Agency (MPCA) an Evaluation of Remediation Alternatives (ERA), which included bench-scale treatment testing, to address Site-originated PCE in the shallow groundwater. The ERA also proposed a pilot study to implement in situ chemical oxidation

(ISCO) in suspected source areas identified in the Source Area investigation after the Parties' technical consultants, including myself, concluded ISCO offered the most effective approach in this next phase of on-site remediation.

9. The Remediating Parties have since completed an additional investigation of the Site, focusing on potential contamination beneath the parking lot on the Site's north side. The Parties completed this additional investigation and submitted an investigative report and an updated shallow groundwater remediation plan to the MPCA in August 2019.

10. The updated remediation plan proposes an on-site remedial solution to address and reduce the mass of PCE contamination that exists in the Site's shallow groundwater, this time in the form of in-situ enhanced biodegradation (ISEB). To date, the MPCA has refused to issue written approval to the Parties to allow them to move forward with ISEB (or any other remedy) to address the shallow groundwater.

11. My colleague, Dr. Melinda Hahn, is submitting an opinion in support of the Parties' intervention motion that provides extensive detail about the failure of regulators, including the MPCA, to properly assess, address and order containment of CVOC contamination originating at the Reilly Tar Superfund Site in St. Louis Park ("the Reilly Tar Site"). The Reilly Tar Site is located west of and upgradient to the 6714 Walker Site, in terms of groundwater flow. The continued presence of and contributions from this unaddressed upgradient source of contamination has posed a number of challenges to the successful investigation and remediation of the Site.

12. The most immediate consequence resulting from the EPA and the MPCA's failure to require the investigation, remediation, and containment of the CVOC contamination at

the Reilly Tar Site is the MPCA's refusal to allow the Parties to undertake the above-described remediation of the Site's shallow groundwater and soil because it continues to insist the Remediating Parties investigate contamination unrelated to the 6714 Walker Site below and at the Site. The MPCA's refusal to acknowledge the incoming contamination from up-gradient sources, including the CVOCs from the Reilly Tar Site, complicates and increases the cost of the 6714 Walker Site cleanup by requiring that contamination originating from other sources be addressed by the Remediating Parties.

13. In my professional opinion and based on my experience with numerous contaminated sites overseen by the EPA, MPCA or both, the two agencies are requiring more investigation and remediation of the 6714 Walker Site than reasonably or ordinarily is expected of any site being investigated and remediated by a private party under government auspices. This difference is demonstrated on the more than 200 multi-media samples collected on the 0.6-acre 6714 Walker Site compared to a nearly total absence of source area investigation at the 80-acre Reilly Tar Site since CVOCs were discovered there.

14. Neither the EPA nor the MPCA, despite several decades of overseeing the Reilly Tar Site, have ever required the responsible parties to fully characterize contamination emanating at or from the Reilly Tar Site. The Reilly Tar Site cannot be properly remediated until it is fully characterized, and it cannot be fully characterized unless and until numerous additional tests are undertaken. Approval of the proposed Consent Decree amendment, which includes the Amended Remedial Action Plan that fails to require the above necessary steps, will continue and will likely exacerbate the contamination of the Platteville and

lower Drift that emanates from the Reilly Tar Site, to the detriment of the 6714 Walker Site and the surrounding neighborhood.

Executed on May 29, 2020.

*Aaron L. Benker*