UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, State of Minnesota, City of St. Louis Park, and City of Hopkins, | Civ. No. 4:80-469 (PAM) |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| Reilly Tar & Chemical Corporation, Housing and Redevelopment Authority of St. Louis Park, Oak Park Village Associates, Rustic Oaks Condominium, Inc., and Philips Investment Co., | |
| Defendants. | |

This matter is before the Court on the Motion to Approve Consent Judgment filed by the United States and the Motion for Limited Intervention filed by Daikin Applied Americas, Inc., and Super Radiator Coils LP (collectively, "Intervenors"). For the following reasons, the Motion for Intervention is denied and the Motion to Approve Consent Judgment is granted.

**BACKGROUND**

In 1980, the United States government and the State of Minnesota brought this environmental lawsuit[1] against Reilly Tar & Chemical Corporation, whose subsidiary

---

[1] The lawsuit was originally brought under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6973, but in 1981, the pleadings were amended to include claims under the Comprehensive Environmental Response, Compensation and Liability Act

operated a coal-distillation and wood treatment business on an 80-acre site in the city of St. Louis Park from 1917 through 1972. (Am. Consent Decree (Docket No. 36-1) ¶ I.A.) During the business's operation, environmentally toxic chemicals were dumped into ponds and ditches, and forced down wells drilled on the site. These chemicals eventually made their way into the aquifers below the site. Those aquifers provide drinking water for much of the western Twin Cities metro area.

In 1986, the parties to the original litigation entered into a consent decree that set forth a remedial action plan. Although some of the plan included actions such as removal of contaminated soil, the plan also required the City of St. Louis Park to pump water out of the aquifers and treat that water to remove contaminants. The plan also required the City to monitor groundwater in the area. The initial consent decree and remedial action plan covered four "chemicals of interest" at the Reilly Tar site: polycyclic aromatic hydrocarbons ("PAHs"), benzene, naphthalene, and phenolics.[2] (Am. Consent Decree at 58, 88-91; see also Am. Remedial Action Plan (Am. Consent Decree Ex. A) at 5.)

Reilly Tar's successor company, Vertellus Specialties, Inc., declared bankruptcy in 2016. Thereafter, the parties sought to amend the consent decree to remove Reilly Tar and substitute the City, which had already assumed most of Reilly Tar's obligations under the consent decree and its accompanying remedial action plan. (See Am. Consent Decree

---

("CERCLA"), 42 U.S.C. §§ 9606-07.

[2] Benzene and naphthalene are volatile organic compounds ("VOCs"). (See Am. Remedial Action Plan at 5 (noting that the contamination at the Reilly Tar site "consist[ed] of PAHs and specific VOCs such as benzene and naphthalene").)

2

¶ I.T.)  The parties characterize the changes to the amended consent decree as "primarily ministerial." (Docket No. 37 at 6.)

Intervenors or their predecessors owned a 0.62-acre parcel southeast of the Reilly Tar site, on which they operated a metal fabricating plant from approximately 1949 to 1998.  The Minnesota Pollution Control Agency ("MPCA") has asserted that Intervenors are responsible for perchloroethylene ("PEC") contamination at their site—specifically in the groundwater below the site, including the same aquifers as the Reilly Tar site.  (Benker Decl. (Docket No. 50) ¶ 10.)  PEC is a chlorinated volatile organic compound ("CVOC"), and Intervenors do not dispute that their predecessors' use of the parcel included PEC.  (Id. ¶ 4.)  Intervenors insist, however, that the Reilly Tar site is the primary source of all contamination, whether CVOCs or VOCs, both on the parcel and in the groundwater below the parcel.

Intervenors dispute that the changes to the amended consent decree are ministerial.  They argue that the amended consent decree will result in increasing their costs to clean up their parcel, and in increased contamination both for their parcel and the surrounding neighborhood.  They specifically take issue with two provisions:  the liability/contribution provision, which Intervenors contend will result in the City being protected from liability for any contribution Intervenors might seek during the cleanup of their parcel; and a provision that ostensibly allows the City to stop pumping and filtering groundwater, which Intervenors assert will increase the migration of pollutants from the Reilly Tar site and will spread the contamination into the surrounding neighborhood.

## DISCUSSION

As an initial matter, Intervenors are incorrect that the amended consent decree and remedial action plan change the City's obligations to pump and filter groundwater at the Reilly Tar site. Rather, the amended remedial action plan allows "any party" to "propose an amended plan to address the [remedial action objectives] in the Drift aquifer." (Am. Remedial Action Plan at 16 (emphasis added).) In fact, the amended plan specifically provides, "If the proposed amendment does not include pumping, the amendment will include a schedule for a cessation pilot test, continued presence and maintenance of system components for a specified period and groundwater monitoring to evaluate the effect of pumping cessation." (Id. at 17.) But any change in the City's obligations must comply with the EPA's National Contingency Plan (id. at 15), which would include public notice of the proposed change, and an opportunity for comment on the proposed change. 42 U.S.C. § 9617(c); see also 40 C.F.R. § 300.435(c)(2) (requiring EPA to publish notice of significant differences of changes to remedial action plan or consent decree and allow for public comment on the changes). Any harm to the Intervenors from potential future changes to the City's obligations under the amended remedial action plan is speculative, at best.

Nor are the Intervenors correct that the proposed amendments limit the City's liability for any environmental costs at Intervenors' site. The government represented to the Court that the amended consent decree's contribution limitation applies only to the "matters addressed" by the consent decree, namely the "actions taken and [] costs incurred in connection with the Reilly Tar Site." (Docket No. 53 at 10.) Intervenors request for

4

inclusion of specific language to this effect in the amended consent decree is unnecessary, because the doctrine of judicial estoppel prevents the government from taking a different position in future litigation. See New Hampshire v. Maine, 532 U.S. 742, 749 (2001) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding") (quoting 18 Moore's Federal Practice § 134.30, p. 134-62 (3d ed. 2000)).

**A.   Standing**

Before determining whether Intervenors have met the requirements for intervention under CERCLA or Rule 24, the Court first assesses whether Intervenors have standing to intervene in this matter. United States v. Metro. St. Louis Sewer Dist., 569 F.3d 829, 833 (8th Cir. 2009). "To demonstrate standing, a plaintiff must clearly allege facts showing an injury in fact, which is an injury to a legally protected interest that is 'concrete, particularized, and either actual or imminent.'" Id. at 833-34 (quoting Curry v. Regents of the Univ. of Minn., 167 F.3d 420, 422 (8th Cir. 1999)). An injury is imminent if it is "not too speculative . . . [and] is certainly impending." Lujan v. Defenders of Wildlife, 504 U.S. 555, 564 n.2 (1992) (quotation omitted). "The plaintiff must also show that the alleged injury is fairly traceable to the defendant's conduct and that a favorable decision will likely redress the injury." Metro. St. Louis Sewer Dist., 569 F.3d at 834. In evaluating both standing and a person or entity's request to intervene, the Court accepts the proposed intervenor's material allegations as true and construes them in favor of standing or intervention. Id.

Intervenors have not established that they have standing to intervene in this matter. They contend that they are suffering concrete and actual harm because they are currently expending money to clean up their parcel. (Reply Mem. (Docket No. 59) at 6.) But the fact that they are spending money to remediate environmental damage is only part of the inquiry. They must also demonstrate that these expenditures are "traceable to" the conduct they challenge. Lujan, 504 U.S. at 560-61 (The "irreducible constitutional minimum of standing" requires, inter alia, "that there be a causal connection between the injury and conduct complained of—the injury has to be fairly traceable to the challenged action . . . .") (quotation omitted). Here, that means that Intervenors must establish that they are spending money because of the consent decree, and more specifically that their remediation expenses will increase because of the amended consent decree. This they cannot do.

The MPCA has charged Intervenors with remediating a certain CVOC from the property and the underlying aquifer, not with remediating the chemicals addressed in the consent decree. Thus, neither the consent decree nor the amended decree affects Intervenors' obligations to remediate their own environmental damage. Put another way, the money Intervenors are required to spend to remediate the damage to their parcel is the same whether the consent decree remains in place or the amended decree is adopted. Intervenors have not established any injury.

What Intervenors request is an entirely new environmental investigation into the contamination at the Reilly Tar site, which they assert would result in a consent decree that shifts the focus of the cleanup from the original chemicals of interest to include additional chemicals. But this proceeding concerns the proceedings that led to the adoption of the

6

original consent decree and the proceedings leading to the proposed amended consent decree. Not only is Intervenor's request untimely—the original consent decree's chemical limitations were known by 1986 at the latest—it is beyond the scope of this action. If Intervenors succeeded in stopping the entry of the proposed amended consent decree, that success would not result in any relief to the Intervenors. They do not and cannot argue that what they want—monitoring for and remediation of CVOCs from the Reilly Tar site—is available in the original consent decree. See Lujan, 504 U.S. at 561 (standing requires that it be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision") (quotations omitted). What Intervenors seek is a different amendment to the consent decree. But their belief that a different amendment might more completely address their concerns does not give them standing, under either the Constitution or CERCLA, to intervene as to the amendment currently before the Court.

**B.     Intervention**

Both Rule 24 and CERCLA allow for the intervention as of right of a person "claim[ing] an interest relating to the subject of the action and [] so situated that the disposition of the action may, as a practical matter, impair or impede the person's ability to protect that interest." 42 U.S.C. § 9613(i); see also Fed. R. Civ. P. 24(a)(2). Under Rule 24(a), the putative intervenor also bears the burden to establish that the existing parties do not adequately protect their interest. CERCLA places this burden on the federal government or the State. 42 U.S.C. § 9613(i).

Even if Intervenors had standing to intervene, the Government has sufficiently established that Intervenors' interests are adequately protected by existing parties.

7

Intervenors do not dispute that the MPCA is holding them responsible for cleaning up CVOCs such as PEC on their site. They assert that because they believe that some of these chemicals are migrating from the Reilly Tar site, their interests are adverse to the City, the State, and the federal government in this matter. Assuming Intervenors are correct that they are not responsible for all CVOCs in the aquifer, the consent decree and amended consent decree do not address this issue. Again, neither the original decree nor the amended decree addresses the chemicals intervenors have been charged with remediating. Intervenors have no interest in what the amended consent decree actually provides that is different from the parens patriae interests fully protected by the federal government, the State, and the City. See Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez, 458 U.S. 592, 607 (1982) (describing sovereign's parens patriae interest "in the health and well-being—both physical and economic—of its residents in general"). Intervenors' only interest is in a different amended consent decree that holds the Reilly Tar site responsible for the chemicals for which the MPCA is currently holding Intervenors responsible. This interest, however, is not at issue here. Intervenors have no statutory right of intervention, nor does Rule 24 support their request for intervention here.

C.     **Amended Consent Decree**

Having determined that Intervenors have no standing to intervene to challenge the Amended Consent Decree, judicial efficiency counsels in favor of the Court addressing the government's Motion to Approve the amended consent decree as well. The Court "reviews a proposed consent decree for fairness, reasonableness, and adequacy." United States v. Hercules, Inc., 961 F.2d 796, 800 (8th Cir. 1992).

The Court has presided over this matter for nearly 40 years. The Court approved the original consent decree and continues to believe that the consent decree was a fair, reasonable, and more than adequate resolution of the environmental response and remediation requirements at the Reilly Tar site. The proposed amended consent decree continues the obligations and responsibilities of the original while updating the language and the science, both of which are imminently necessary after more than three decades. The Court therefore finds that the proposed amended consent decree is fair, reasonable, and adequate. In addition, it is consistent with the environmental laws and with the public interest. The Court therefore will grant the government's request to enter the proposed amended consent decree.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1. The Motion to Intervene (Docket No. 45) is **DENIED**; and
2. The Motion to Approve Proposed Consent Judgment (Docket No. 37) is **GRANTED**.

Dated: <u>July 23, 2020</u>

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge